UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **SANDY HEARD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 5:23-cv-1224-LCB |
| | ) |
| **MICHELLE KING**[1], *Acting Commissioner of Social Security Administration*, | ) |
| | ) |
| **Defendant.** | |

# MEMORANDUM OPINION & ORDER

Sandy Heard filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an answer and a copy of the administrative record. (Doc. 7). Both Heard and the Commissioner have fully briefed the relevant issues, *see* (Doc. 11 & 14)[2], and the case is ripe for review. For the following reasons, the Commissioner's final decision is due to be affirmed.

---

[1] In her original complaint, Heard named Kilolo Kijakazi in her official capacity as the then-acting Commissioner of the Social Security Administration. Michelle King has assumed that role as of January 2025 and is therefore automatically substituted as the defendant in this matter. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.").

[2] Heard did not file a reply brief.

## I. Background

On April 19, 2021, Heard protectively filed a Title II application for a period of disability and disability insurance benefits. She also protectively filed a Title XVI application for supplemental security income on April 19, 2021. In both applications, the claimant alleged disability beginning March 11, 2021. These claims were denied initially on January 26, 2022, and upon reconsideration on July 29, 2022. Heard then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 11, 2023. Heard testified at the hearing, as did an impartial vocational expert ("VE"). The ALJ subsequently issued an unfavorable decision. The Appeals Council denied Heard's request for review, and the ALJ's decision became the Commissioner's final decision. This lawsuit followed.

## II. The ALJ's decision

After the hearing, the ALJ issued a written opinion explaining her decision. (Tr. at 17-31). In issuing her decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. *See* 20 CFR 416.920(a). The steps are followed in order and, if it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant

physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Heard did not engage in substantial gainful activity during the relevant time period. (Tr. at 19). Accordingly, the ALJ moved on to the second step of the evaluation.

At step two, an ALJ is to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…." *Id*. If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. If she does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Heard had the following severe impairments: degenerative disc disease of the lumbar and cervical spine; lymphedema in right upper extremity status-post breast cancer with chemotherapy, radical mastectomy of the right breast, and radiation therapy; headaches, borderline intellectual functioning, anxiety, depression, and a history of methamphetamine abuse. (Tr. at 20), citing 20 CFR 404.1520(c) and 416.920(c).

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I. If the claimant's

impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. Otherwise, the ALJ proceeds to the next step. In this case, the ALJ found that Heard's impairments, both singly and in combination, did not meet or equal any of the listed criteria. Therefore, the ALJ proceeded to step four.

Step four of the evaluation requires an ALJ to first determine the claimant's residual functional capacity ("RFC"), and whether she has the RFC to perform the requirements of any past relevant work. 20 CFR 416.920(f). The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. In Heard's case, the ALJ found that she had the following RFC:

> claimant has the residual functional capacity to perform a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she occasionally can push or pull with her right upper extremity. She can perform frequent postural maneuvers except for occasional kneeling and crouching and no climbing of ladders, ropes, or scaffolds. She should avoid unprotected heights. The claimant can understand, remember, follow, and perform simple, routine instructions and tasks; and she can concentrate and remain on task for two hours at a time sufficiently to complete an eight-hour workday. She can have occasional interaction with the general public, and she can perform jobs involving occasional, well-explained, workplace changes

(Tr. at 22). After fully and thoroughly explaining the basis for the above RFC, the ALJ determined that Heard was able to perform her past relevant work as a

housekeeper/cleaner. (Tr. at 29). The ALJ also found that there were other jobs existing in significant numbers in the national economy that Heard could perform given her age, education, work experience, and RFC. *Id.*

Based on the findings above, the ALJ determined that Heard was not disabled as defined by the Social Security Administration. (Tr. at 30).

## III. Standard of Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV. Heard's arguments

Heard makes two arguments in her brief. First, she argues that the ALJ erred in determining that she has the RFC to perform a full range of light work. Second, Heard contends that the record lacks substantial evidence to support the ALJ's determination that one of her doctor's opinions was not persuasive. The Court will address each in turn.

### A. There is substantial evidence supporting the ALJ's determination of Heard's RFC.

In her brief, Heard argues that "[t]he objective medical evidence together with the treatment records does not provide substantial evidence to support the ALJ's conclusion regarding the Plaintiff's residual functional capacity. The Plaintiff's debilitating pain and limitations from her multi-level disc bulges in her lumbar and cervical spine together with her lymphedema in her right upper extremity are preclusive of the ability to perform a *full range of light work*. As such, the record does not contain evidence which would allow a reasonable person to conclude the Plaintiff has the physical ability to perform a *full range of light work*." (Doc. 11 at 12) (emphasis added). However, the ALJ did not find that Heard could perform a *full* range of light work. As noted above, the ALJ determined that Heard had "the residual functional capacity to perform a full range of light work … *except* that she occasionally can push or pull with her right upper extremity. She can perform frequent postural maneuvers except for occasional kneeling and crouching and no climbing of ladders, ropes, or scaffolds. She should avoid unprotected heights." (Tr.

6

22) (emphasis added).  Thus, the ALJ's finding was that Heard could perform a reduced range of light work.

To the extent Heard's argument could be construed to challenge that finding, it is similarly without merit, because the ALJ's findings are supported by substantial evidence.  Heard argues that the ALJ selectively picked and chose medical evidence to support her conclusion while ignoring evidence to the contrary.  (Doc. 11 at 8). Having reviewed the ALJ's opinion along with the entirety of the record, the Court disagrees.

When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms.  *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).  If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work.  *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225-26.  An

ALJ "must clearly 'articulate explicit and adequate reasons'" for discounting a claimant's allegations of disabling symptoms and limitations. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). Courts "will not disturb a clearly articulated [subjective complaint] finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Foote*, 67 F.3d at 1562). Heard correctly notes that an ALJ may not "pick and choose among a doctor's records to support his own conclusion." (Doc. 11 at 8), quoting *Chambers v. Astrue*, 671 F. Supp.2d 1253, 1258 (N.D. Ala. 2009). However, a review of the ALJ's opinion in this case reveals that she thoroughly reviewed and considered the entire record.

In her opinion, the ALJ found that Heard's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the record. In discussing Heard's subjective complaints that she could not stand, walk, or sit for long periods of time and could not lift light weights, grasp, or feed herself, the ALJ noted, among other things, an examination performed at Central Neurology Associates in September of 2021. (Tr. at 27). In that examination, Heard demonstrated normal strength, tone, and range of motion in all extremities, despite having decreased sensation to light touch and pinprick of the hands and an antalgic and ataxic gait (Tr. at 730). The record notes that despite a mild hand tremor, Heard demonstrated normal "finger-nose-finger coordination." (Tr. at 730). Heard also

8

reported during that examination that "[s]he works outside and uses her hands frequently in her yard" (Tr. at 728). Other providers similarly noted that Heard had a normal gait. For example, Heard was treated at Cullman Regional Medical Center on April 11, 2021, after stepping on a nail at her home. That exam noted that even despite a puncture wound to her left foot, her gait was normal. (Tr. at 615). Heard also presented to the same facility on June 11, 2021, for a crush injury to her foot. (Tr. at 631). That record notes Heard reported "that 1 week ago she dropped hand trucks on her foot and then 2 days ago she dropped a heavy rock on the same foot." *Id*.

The ALJ went on to thoroughly discuss Heard's treatment for breast cancer and various issues she was treated for following her treatment for that condition. For example, the ALJ noted that Heard reported to an occupational therapist that a prescribed compression pump helped with her lymphadenopathy, the condition Heard alleges hinders her ability to use her right arm and grasp objects. (Tr. at 26). The ALJ discussed how other doctors, including one of Heard's oncologists, noted that he observed "no joint pain with range of motion, no neurological deficits, and appropriate mood and affect." *Id*. Other providers, including Dr. Christopher LaGanke, noted that while Heard did have lymphedema in her right arm, her strength was normal. The ALJ also thoroughly discussed various imaging studies, including an MRI done on her lower back. (Tr. at 23-24, 27). Based on the Court's review

of the ALJ's opinion, it is clear that she articulated explicit and adequate reasons for discounting Heard's testimony as to the severity of her symptoms.

The ALJ similarly found that Heard's statements about her mental limitations were not as severe and persistent as she claimed. In explaining this finding, the ALJ discussed several psychological examinations included in the record. For example, the ALJ discussed the consultative examination Heard underwent in January 2022. That examination noted that Heard reported no hospitalizations for mental health although she did report completing an outpatient program for a 15-year history of methamphetamine abuse. Heard reported that she was "unable to do things that require concentration" and that "she cannot get her hands and brain lined up to do most activities." (Tr. at 723). Though the examiner noted that she had some difficulty with concentration and memory, she showed moderate insight and decent judgment. *Id*. Citing to various medical records, the ALJ noted that other providers had consistently reported Heard to have normal memory, attention, and concentration. (Tr. at 27). While the record contained evidence of two additional consultative examinations regarding Heard's mental limitations, the ALJ found those unpersuasive because they were too remote in time to be of probative value.³ (Tr. at 29-30). Aside from those records, there was little evidence to support any of Heard's alleged mental limitations.

---

³ Both were conducted in 2011, ten years before Heard's alleged onset date.

Having reviewed the ALJ's opinion as well as Heard's medical records, the Court finds that the ALJ properly considered all the relevant evidence and adequately and explicitly explained her findings. While Heard does point to other evidence in the record that would support her allegations, she is essentially asking this Court to reweigh the evidence. However, that is not this Court's function. As noted, this Court's limited review "precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The medical evidence cited by the ALJ is more than substantial, and Heard's cited evidence does nothing to call any of those findings into question.

### B. The ALJ's determination that Dr. James's opinion was unpersuasive is supported by substantial evidence.

In her opinion, the ALJ discussed an opinion by Heard's primary care physician, Dr. Terry James. The ALJ noted as follows:

> Dr. James opined on 05/10/2021, that the claimant would need to lie down during the workday, in addition to normal breaks and meals. He stated that she can sit one hour during an eight-hour workday, and she can stand or walk one hour in an eight-hour workday. He said that she can lift and carry less than five pounds occasionally; and she can grasp, reach, and perform fine manipulation with the right upper extremity less than ten percent of the workday. Dr. James further opined that the claimant would miss more than four days of work per month (Ex. 10F). On the same date, he assessed the claimant with marked limitations in her ability to work at an appropriate and consistent pace, to ignore or avoid distractions, and to manage psychologically based symptoms. He assessed moderate limitations in her ability to follow one- or two-step instructions, to recognize and correct mistakes, to sequence multi-step

11

> activities, to make work-related decisions, to initiate and perform known tasks, to sustain an ordinary routine and regular work attendance, to adapt to changes, to distinguish between acceptable and unacceptable work performance, to set realistic goals, to make independent plans, and to maintain appropriate hygiene and attire. He also assessed a moderate impairment in her ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. He stated, however, that she can manage her own funds. (Ex. 11F).

(Tr. at 24-25). The ALJ found these opinions unpersuasive because they were not supported by sufficient examination findings. More importantly, the ALJ noted that these opinions came from statements on "checklist forms that appear to be completed based solely on [Heard's] subjective complaints." (Tr. at 25). The ALJ noted:

> The checklist forms ask the provider to check one of five boxes that indicate the claimant's physical functional limitations, "mental ability to work," and other questions which require a yes or no answer. None of the answers to any of these questions provide any explanation to how the answers were derived, or what supporting information he relied upon. Most of the questions require complete speculation on the part of Dr. James, such as how many days a month the claimant may miss, or how there has been an inability to work, etc.

(Tr. at 25). The Court also notes that the wording of the forms suggests that they were provided to Dr. James by an outside source. *See, e.g.* (Tr. at 705) (instructing the evaluator to "[p]lease answer the following questions concerning your patient's impairments. If available, attach all relevant treatment notes, laboratory and test result."). It does not appear that Dr. James attached any specific notes or test results to the checklists.

The ALJ was correct in noting that the forms Dr. James completed do not cite to any specific, objective medical evidence and are consequently due little weight. Courts have found that checklist forms such as these have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions. *See Hammersley v. Astrue*, No. 508-CV-245-OC-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009), citing *Spencer o/b/o Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir.1985). As in her first argument, Heard points to certain parts of the record that she claims would support Dr. James's findings on the checklist. However, as noted above, what Heard is asking is that this Court reweigh the evidence and come to a different conclusion than the ALJ. But such a reweighing would be improper. As discussed above, the ALJ thoroughly discussed Heard's medical records and gave adequate and explicit reasons for her findings. Accordingly, Heard is due no relief on this issue.

## V. Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**DONE** and **ORDERED** January 29, 2025.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE